*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *ANDREW READY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:17-cv-00434-JDL* |
| | ) | |
| *SYNCHRONY BANK,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON MOTION TO DISMISS*

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the defendant,

Synchrony Bank, moves to dismiss the plaintiff's complaint alleging violations of the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for lack of standing and failure to state a

claim upon which relief can be granted. *See* Memorandum of Law in Support of Defendant's

Motion To Dismiss ("Motion"), attached to Notice of Motion To Dismiss (ECF No. 11), at 1;

Complaint (ECF No. 1) ¶¶ 27-28. For the reasons that follow, I recommend that the Motion be

denied.

## I. Applicable Legal Standards

### A. Rule 12(b)(1)

When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the

burden of demonstrating that the court has jurisdiction. *Aversa v. United States*, 99 F.3d 1200,

1209 (1st Cir. 1996). The moving party may use affidavits and other matter to support the motion,

while the plaintiff may establish the existence of subject matter jurisdiction through extrapleading

material. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at

159–60 (3d ed. 2004); *see also Aversa*, 99 F.3d at 1210; *Hawes v. Club Ecuestre el Comandante*,

598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

## B. Rule 12(b)(6)

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II. Factual Background

The complaint sets forth the following relevant factual allegations.[1]

The plaintiff resides in Limerick Maine, and the defendant is a business entity headquartered in Draper, Utah. Complaint ¶¶ 4-5. In about July 2017, the plaintiff began receiving phone calls from the defendant on his cellular telephone ("cell phone"). *Id*. ¶ 7. These calls were not for emergency purposes. *Id*. ¶ 9. They were made in connection with a credit card account. *Id*. ¶ 10.

The defendant called the plaintiff's cell phone on consecutive days, at least twice per day, including mornings, nights, and weekends. *Id*. ¶ 11. On or about July 5, 2017, the plaintiff spoke with the defendant and instructed it to stop calling his cell phone. *Id*. ¶ 13. The defendant continued to place calls to the plaintiff's cell phone on consecutive days, at least twice per day, including mornings, nights, and weekends. *Id*. ¶¶ 14-15. On or about August 10, 2017, the plaintiff spoke with the defendant and again instructed it to stop calling his cell phone. *Id*. ¶ 16. The defendant continued to place calls to the plaintiff's cell phone on consecutive days, at least twice per day, including mornings, nights, and weekends. *Id*. ¶¶ 17-18. The plaintiff estimates that the defendant called his cell phone at least 324 times. *Id*. ¶ 19.

On information and belief, based on the frequency, number, nature, and character of the calls, the defendant placed them using an automatic telephone dialing system. *Id*. ¶¶ 12, 20. The defendant did not have the plaintiff's express consent to use an automatic telephone dialing system to place these calls, and knew that it did not have such consent. *Id*. ¶¶ 21-22.

---

[1] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id*. "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id*. (citation and internal quotation marks omitted).

The plaintiff is annoyed and feels harassed by the defendant's calls. *Id*. ¶ 26.

## III. Discussion

## A. The TCPA

> Congress enacted the TCPA in 1991 based on findings that the use of the telephone to market goods and services to the home and other businesses had become pervasive due to the increased use of cost-effective telemarketing techniques. Many consumers, Congress determined, [were] outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

*ACA Int'l v. FCC*, __ F.3d __, No. 15-1211, 2018 WL 1352922, at *2 (D.C. Cir. Mar. 16, 2018) (citations and internal quotation marks omitted). "The TCPA restricts calls both 'to any residential telephone line' and to 'any telephone number assigned to a . . . cellular telephone service.'" *Id*. (quoting 47 U.S.C. § 227(b)(1)(A)(iii), (B)).

With respect to cell phones, Congress "made it 'unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service,' 'unless such call is made solely to collect a debt owed to or guaranteed by the United States.'" *Id*. (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "The statute defines an 'automatic telephone dialing system' (ATDS, or autodialer) as 'equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. (quoting 47 U.S.C. § 227(a)(1)).

The TCPA "contains a private right of action permitting aggrieved parties to recover at least $500 in damages for each call made (or text message sent) in violation of the statute, and up to treble damages for each 'willful[ ] or knowing[ ]' violation." *Id*. at *3 (quoting 47 U.S.C. § 227(b)(3)). "There is no cap on the amount of recoverable damages." *Id*.

"The elements of a TCPA claim are thus: (1) the defendant called a cellular telephone; (2) using an ATDS; (3) without the recipient's prior express consent." *Jones v. FMA Alliance Ltd.*, 978 F. Supp.2d 84, 86 (D. Mass. 2013) (footnote omitted).

## B. Rule 12(b)(1) (Lack of Standing)

The First Circuit has noted:

> It goes without saying – but we say it anyway – that federal courts are courts of limited jurisdiction, limited to deciding certain cases and controversies, for example. A key component of the case-or-controversy requirement is that a suing party demonstrate standing to sue. And to show standing in this sense, the party invoking federal jurisdiction . . . must show the following: (a) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (b) a causal connection – what the high Court occasionally calls traceability – between the injury and the challenged conduct; and (c) redressability – that the injury will likely be redressed by a favorable decision.

*Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016) (citations and internal punctuation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).

The defendant contends that the plaintiff fails to demonstrate that he suffered a concrete injury and, hence, lacks standing to pursue his TCPA claim, because "[h]e utterly fails to link his purported annoyance to any specific call with any detail whatsoever." Motion at 11; *see also* Defendant Synchrony Bank's Reply Brief in Support of Its Motion To Dismiss ("Reply") (ECF No. 13) at 8-9 ("Plaintiff . . . does not allege that he answered any of the phone calls; there are no allegations about how Plaintiff was forced to deal with the calls or how the calls caused a specific and concrete harm; he does not allege an invasion of privacy, loss of value or loss of use and enjoyment of his phone or daily activities.").

For this proposition, the defendant relies primarily on two cases in which the United States District Court for the District of Southern California held that even more detailed allegations of

harm than those set forth in the instant complaint failed to demonstrate concrete injury sufficient

to confer standing to sue pursuant to the TCPA. *See* Motion at 8-11; Reply at 7-9; *Ewing v. SQM*

*US, Inc.*, 211 F. Supp.3d 1289, 1293 (S.D. Cal. 2016) (plaintiff's allegations that a robocall caused

him to incur a charge, depleted his cell phone battery, and wasted his time insufficient to

demonstrate concrete injury when plaintiff would have incurred same harms had the caller dialed

his number manually); *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp.3d 1256, 1259, 1262 (S.D.

Cal. 2016) (plaintiff's allegations of severe and substantial emotional distress, including physical

and emotional harm, from more than 290 robocalls insufficient to demonstrate concrete injury

when she answered only two calls and may not have heard others and, even as to those she may

have heard or answered, she did "not offer any evidence of a concrete injury caused by the use of

an ATDS, as opposed to a manually dialed call").

However, after the conclusion of the instant briefing, the United States Court of Appeals

for the Ninth Circuit reversed and remanded *Romero* (and impliedly repudiated the similar

reasoning of *Ewing*), holding:

> The district court erred in concluding that Romero lacked standing under Article III
> to bring a TCPA claim. The district court did not have the benefit of *Van Patten v.*
> *Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), in which we held that
> a violation of the TCPA is a concrete, *de facto* injury. . . .
>
> We also reject the Banks' attempt to distinguish *Van Patten*. The TCPA is not
> limited to telemarketing calls; Congress recognized unsolicited contact as a
> concrete harm regardless of caller or content, and this harm is similar in kind to
> harm that has traditionally been redressable by courts. Thus, a plaintiff alleging a
> violation under the TCPA need not allege any *additional* harm beyond the one
> Congress has identified.

*Romero v. v. Dep't Stores Nat'l Bank*, __ F. App'x __, No. 16-56265, 2018 WL 1079728, at *1

(9th Cir. Feb. 28, 2018) (citations and internal quotation marks omitted) (emphasis in original).

Even prior to this development, as the plaintiff observes, *see* Response in Opposition to Defendant's Motion To Dismiss ("Opposition") (ECF No. 12) at 8-9, a number of courts, including the United States District Court for the District of Massachusetts, criticized *Romero* and/or reached the same conclusion as the Ninth Circuit, that is, that calls allegedly violating the TCPA inherently cause concrete injury for purposes of standing to pursue a TCPA claim, *see, e.g., Gibbs v. SolarCity Corp.*, 239 F. Supp.3d 391, 395-96 (D. Mass. 2017) ("This court agrees with the majority of courts finding that Congress, when it enacted the TCPA, recognized receiving unsolicited telemarketing calls is a legally cognizable harm and comprises a 'concrete' injury. . . . Unsolicited telemarketing phone calls[,] by their nature, invade the privacy and disturb the solitude of their recipients.") (citation and internal quotation marks omitted); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments*, Inc., Case No. 16-cv-05486-JCS, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) ("In the wake of the Supreme Court's decision in *Spokeo*, numerous courts have addressed whether a plaintiff's allegations that it received ATDS telephone calls in violation of the TCPA is sufficient to establish Article III standing. The vast majority of courts that have addressed this question have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury.") (citations omitted).

The First Circuit likely would adopt the better-reasoned majority approach.[2]

Because, as discussed below, the plaintiff's allegations suffice to state a claim of TCPA violations, they also suffice to demonstrate that he suffered a concrete injury for purposes of standing to press his TCPA claim.

---

[2] The defendant also cited *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016), *see* Motion at 9-10; Reply at 8, in which the First Circuit held that all but one member of a putative class action suit lacked standing to press claims against a drug manufacturer because class members had failed to demonstrate that they suffered any particularized injury as a result of the rationing of a drug, *see Hochendoner*, 823 F.3d at 731-25. *Hochendoner* is distinguishable in that it is not a TCPA case.

**C. Rule 12(b)(6) (Failure To State Claim)**

The defendant separately seeks dismissal of the complaint for failure to state a claim upon which relief can be granted. *See* Motion at 1, 4-7. It contends that the complaint "merely alleges – without any factual support or detail – that Defendant used an [ATDS]." *Id*. at 1. The defendant notes that, in *Jones*, the United States District Court for the District of Massachusetts dismissed a complaint of TCPA violations on the basis that "[a] bare allegation that defendants used a[n] ATDS is not enough." *Id*. at 5 (quoting *Jones*, 978 F. Supp.2d at 86).

As the plaintiff rejoins, *see* Opposition at 5-6, some courts have held that a bare allegation that a defendant used an ATDS is enough to survive a motion to dismiss, conceptualizing such allegations as facts rather than threadbare recitals of an element of the cause of action, *see, e,g, Hashw v. Dep't Stores Nat'l Bank*, 986 F. Supp.2d 1058, 1061 (D. Minn. 2013) ("Here, Hashw has pleaded that an ATDS was used to make the calls to his cellular phone. As the Court must accept that allegation as true at this juncture, nothing more is required to state a claim for relief under the TCPA.") (citation omitted); *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (plaintiff's allegation that defendant used an ATDS or an artificial or prerecorded voice sufficed to avoid dismissal for failure to state a claim; "[n]or would it even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by [the defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail"); *Buslepp v. B & B Entm't, LLC*, No. 12-60089-CIV, 2012 WL 1571410, at *1 (S.D. Fla. May 3, 2012) ("the allegation that Defendant used [an ATDS] . . . is a factual allegation under *Twombly* and *Iqbal*").

I need not resolve the conflict in approach because, as the plaintiff argues in the alternative, *see* Opposition at 6-8, he pleads additional facts from which one could draw a reasonable inference that an ATDS was used, namely, that the defendant called his cell phone at least 324 times in a similar pattern of calls (on consecutive days, at least twice per day, including mornings, nights, and weekends) even after he twice requested that the defendant cease calling, *see* Complaint ¶¶ 11, 13-19.

The defendant counters that the complaint nonetheless remains deficient because it fails to raise a plausible inference that the phone equipment had the capacity to store or produce telephone numbers or randomly generate such numbers, qualifying it as an ATDS. *See* Reply at 3, 6-7. It asserts that the complaint "utterly lacks any allegations regarding: the exact time frame of the calls (including whether the calls have continued or stopped); the specific dates and times of each call; whether the calls were automated or prerecorded; a description of the content of any calls or messages; the context in which a message was received; that Plaintiff heard 'dead air,' a pause or delay, or silence upon answering any specific call; whether a live person was on the other end of the line; or whether the calls came from the same telephone number." *Id*. at 3-4.

The defendant cites *Jones* and *Trenk v. Bank of Am.*, Civ. No. 17-3472, 2017 WL 4170351 (D.N.J. Sept. 20, 2017), for the proposition that "merely alleging that [the plaintiff] received 324 calls from Synchrony does not satisfy his burden." *Id*. at 6-7. For several reasons, the plaintiff has the better argument.

First, as discussed above, the plaintiff did not merely allege that Synchrony called him 324 times. He alleged a pattern of calling. *See* Complaint ¶¶ 11, 15, 18-19. He also alleged that the calls were made in connection with a credit card account. *See id*. ¶ 10. One plausibly can infer from those alleged facts that an ATDS was used.

9

Second, *Jones* and *Trenk* are distinguishable. In *Jones*, the plaintiff's proposed amended complaint pleaded no more than a bare allegation that the defendant used an ATDS. *See Jones*, 978 F. Supp.2d at 87. In *Trenk*, the plaintiff merely alleged that he received a certain number of calls and text messages over an approximately six-month period. *See Trenk*, 2017 WL 4170351, at *2-3.[3]

Third, caselaw supports the plaintiff's position. In *Hewitt v. Synchrony Bank*, Case No. 17-00874-CV-W-ODS, 2017 WL 6349051 (W.D. Mo. Dec. 12, 2017), the court concluded that allegations nearly identical to those at issue here sufficed to raise a plausible inference that the defendant has used an ATDS. The *Hewitt* court held that, while the plaintiff's complaint was "thin," he had sufficiently pleaded that the defendant used an ATDS machine when he estimated that he had received at least 45 calls that were made on consecutive days, at least twice per day, including mornings, nights, and weekends. *Hewitt*, 2017 WL 6349051, at *3. The court observed that, although the plaintiff did not "detail whether a pre-recorded message or human voice would respond if he answered or whether any voicemails were left if he did not answer, the number of calls and timing can imply Defendant used an ATDS to place these calls." *Id*.

In addition, as the United States District Court for the District of Massachusetts recently observed, the First Circuit in an unpublished 2016 decision "found that the timing, length,

---

[3] While *Jones* and *Trenk* note the significance of the content of calls or messages in raising an inference that an ATDS was used, they do not hold that such information is *essential*. *See Jones*, 978 F. Supp.2d at 86-87 (observing that "well-pled allegations of an ATDS rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used") (footnote and internal quotation marks omitted); *Trenk*, 2017 WL 4170351, at *2 ("Importantly, the complaint makes absolutely no factual allegations about the content of the alleged calls and text messages, nor . . . about whether the calls and text messages were automated or prerecorded.").

frequency and volume of the alleged phone calls may permit a reasonable inference that an ATDS was used." *McDermet v. Trinity Heating & Air, Inc.*, Civil Action No. 17-10566, 2018 WL 840743, at *3 (D. Mass. Feb. 12, 2018) (citing *Jones v. Hanna*, No. 14-2346, slip op. at [2] (1st Cir. Mar. 28, 2016)). *See also, e.g., Hashw*, 986 F. Supp.2d at 1061 (holding, in the alternative, that even if an allegation that an ATDS was used is insufficient, ATDS use could be inferred from plaintiff's allegations that he received 112 debt collection and/or telemarketing calls over a relatively short period of time).

In sum, even assuming, *arguendo*, that more is required than a naked allegation that an ATDS was used, a plaintiff "need not plead specific technical details regarding the use of an ATDS[.]" *Snyder v. Perry*, No. 14-CV-2090 (CBA)(RER), 2015 WL 1262591, at *8 (E.D.N.Y. Mar. 18, 2015). Rather, a plaintiff "must at least describe, in layman's terms, the facts surrounding the calls or the circumstances surrounding the calls that make it *plausible* that [the defendant was] using an ATDS." *Id.* (citation and internal quotation marks omitted) (emphasis in original). The plaintiff has done so here.

### IV.  Conclusion

For the foregoing reasons, I recommend that the court **DENY** the Motion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 6th day of April, 2018.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
